## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| OPTINREALBIG.COM, LLC, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) |
| | ) |
| | ) |
| INFINITE MONKEYS & CO., LLC, | ) |
| RONAL F. GUILMETTE, and | ) |
| TIMOTHY J. WALTON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff OptInRealBig.com, L.L.C., for its Complaint against Infinite Monkeys & Co., L.L.C., Ronal F. Guilmette, and Timothy J. Walton, states as follows:

### Introduction

1. This action is brought following dismissal of Plaintiff's Chapter 11 bankruptcy proceeding. Specifically, Plaintiff brings this action against Infinite Monkeys & Co., L.L.C., which lodged a proof of claim in the OptInRealBig.com Chapter 11 proceedings, its owner Ronal F. Guilmette, and its agent Timothy J. Walton. This action is brought to recover damages incurred as a result of that proof of claim's filing and the Defendants' subsequent actions.

## Parties

2. Plaintiff OptInRealBig.com, L.L.C. ("OptIn"), is a limited liability company organized under the laws of Nevada, with its principal place of business in Colorado. OptIn's constituent membership is domiciled in Colorado and Nevada.

3. Defendant Infinite Monkeys & Co., L.L.C. ("Infinite Monkeys"), is a limited liability company organized under the laws of California, with its principal place of business located in California.

4. Infinite Monkeys is wholly owned by Mr. Ronal F. Guilmette, who resides in California.

5. Timothy J. Walton is an individual, who resides in California.

## Jurisdiction and Venue

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court's jurisdiction also properly rests upon 28 U.S.C. §1334, as this action is related to a case under Title 11.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as Colorado is a judicial district in which a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred. Venue is also proper pursuant to 28 U.S.C. §1409, as this action is related to a case under Title 11.

## General Allegations

8. Since its creation, OptIn has been engaged in the business of advertising on the Internet.

9. On March 25, 2005, OptIn filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado. OptIn's Chapter 11 proceeding was assigned Case Number 05-16304 HRT.

10. On July 29, 2005, Infinite Monkeys filed a Proof of Claim in the OptIn Chapter 11 proceedings. The Proof of Claim asserted an unsecured debt incurred between March 18, 2005, and June 2, 2005. The amount claimed in Infinite Monkeys' Proof of Claim is $49,168,000.00.

11. The Proof of Claim was signed by Timothy J. Walton as agent for Infinite Monkeys.

12. Infinite Monkeys amended its Proof of Claim on October 17, 2005. The Amended Proof of Claim asserted debt incurred between January 1, 2005, and March 25, 2005. The amount Infinite Monkeys' Amended Proof of Claim itself asserts was $43,687,000.00 "plus reasonable attorney fees"; the attached Narrative pegs the claim value at $43,136,000.00.

13. In the Chapter 11 case, Infinite Monkeys asserted that its claim was based upon its receipt of spam emails from OptIn and an entitlement to liquidated damages under California statute(s).

14. Discovery was taken as the Chapter 11 proceedings moved along.

15. In the course of discovery, Mr. Guilmette's deposition was taken. That deposition was taken on October 31, 2005.

16. In deposition, Mr. Guilmette admitted that Infinite Monkeys was formed on March 18, 2005.

17. In deposition, Mr. Guilmette admitted that he was Infinite Monkeys' sole manager.

18. In deposition, Mr. Guilmette stated that Infinite Monkeys' business is to "develop software, and it seems to do other things." Mr. Guilmette further stated that the "other things" were to "pursue its legal rights."

19. In deposition, Mr. Guilmette stated that Infinite Monkeys' income generated to that date totaled $6,000, which was comprised of a single check written by an insurance broker. Mr. Guilmette further stated that the $6,000 was paid in consideration of a release of claims against the broker arising from that broker's transmission of "junk faxes."

20. In deposition, Mr. Guilmette stated that the start-up capital with which he funded Infinite Monkeys totaled $7,000.

21. In deposition, Mr. Guilmette stated that in the course of Infinite Monkeys' business, he hoped to acquire the rights to use domain names that did receive considerable amounts of spam.

22. In deposition, Mr. Guilmette stated that in the course of Infinite Monkeys' business he did acquire such domain names and transferred them to Infinite Monkeys.

23. In deposition, Mr. Guilmette admitted that the statement in Infinite Monkeys' Amended Proof of Claim reflecting that "Infinite has been the recipient of 43,687" actionable emails was false.

24. In deposition, Mr. Guilmette could not state how many of the emails upon which Infinite Monkeys' Amended Proof of Claim is based were actually read by him or other Infinite Monkeys personnel or agents.

25. In the course of discovery, OptIn requested disclosure of the emails that were the putative basis for Infinite Monkeys' claim.

26. The total number of emails disclosed to OptIn during discovery was thousands fewer than Infinite Monkeys' averred total of 43,687.

27. In deposition, Mr. Guilmette admitted that some email that Infinite Monkeys included among the 43,687 as forming the basis for its claim were not actually received by Infinite Monkeys.

28. In deposition, Mr. Guilmette admitted that it was impossible for Infinite Monkeys to have received any email before the company was created on March 18, 2005.

29. Neither Mr. Guilmette nor Mr. Walton reviewed more than a small fraction of the email that formed the basis of the Proof of Claim.

30. The emails that formed the basis for the Proof of Claim were not received by Infinite Monkeys.

31. OptIn sent fewer than 100 emails to Infinite Monkeys.

32. OptIn did not violate the statutes upon which Infinite Monkeys based its Proof of Claim.

### First Cause of Action – Abuse of Process

33. OptIn incorporates all prior allegations herein by reference.

34. One or more ulterior purposes existed for Defendants' use of the bankruptcy proceedings described in this Complaint, including attempts to obtain payment based upon a false claim and attempts to obtain a settlement based upon a false claim.

35. In the course of the bankruptcy proceedings described in this Complaint, Defendants acted willfully and in a manner that is not proper in the regular course of those proceedings.

36. Defendants' actions lacked a reasonable factual basis, and lacked a cognizable basis in law.

37. OptIn has been damaged by Defendants' actions, and its legal interests have been adversely affected by Defendants' activities.

## Second Cause of Action – Civil Conspiracy

38. OptIn incorporates all prior allegations herein by reference.

39. In taking the actions described in this Complaint, Defendants had as their objective to extract money from OptIn to which they were not entitled.

40. An agreement (or meeting of the minds) existed between and among the Defendants to take the actions described in this Complaint in order to accomplish that objective.

41. In furtherance of that course of action, Defendants performed one or more unlawful overt acts.

42. OptIn has been damaged as a proximate result of Defendants' actions.

## Exemplary Damages Allegations

43. OptIn incorporates all prior allegations herein by reference.

44. The injuries suffered by OptIn were attended by circumstances of fraud, malice, or willful and wanton conduct.

45. Exemplary damages are appropriately awarded in this action pursuant to Colo. Rev. Stat. § 13-21-102.

## Prayer for Relief

WHEREFORE, OptIn requests that the Court enter Judgment in its favor and against Defendants, granting the following:

1. Damages as allowed by law and proven at trial; and

2. Exemplary damages as allowed by law; and

3. Costs of this action, including but not limited to expert witness and attorneys' fees

as allowed by law; and

4. Pre- and post-judgment interest as allowed by law; and

5. Such further relief as the Court deems just and equitable.

### Jury Demand

OptIn respectfully demands a trial by jury.

Dated: April 5, 2006

LINDQUIST & VENNUM P.L.L.P.

By: *s/ Patrick D. Frye*
John C. Smiley
Patrick D. Frye
Lindquist & Vennum P.L.L.P.
600 17th St., Suite 1800-S
Denver, CO 80202
(303) 573-5900 - Telephone
(303) 573-1956 - Facsimile
**pfrye@lindquist.com**

Address of Plaintiff:

1333 West 120th Avenue, Suite 101
Westminster, CO 80234